IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-mc-_____

FLEXENTIAL COLORADO CORP.,

        Movant,

SWITCH, LTD.,

        Respondent.

_____

**MOTION TO QUASH SUBPOENA OR,
IN THE ALTERNATIVE, FOR PROTECTIVE ORDER**

_____

        Pursuant to Federal Rules of Civil Procedure 26 and 45, nonparty Flexential Colorado Corp. ("Flexential") respectfully moves to quash or, in the alternative, for the entry of a protective order concerning the subpoena served on Flexential by Switch Ltd. ("Switch") in the action titled *Switch Ltd. v. Uptime Institute, LLC, et al.*, U.S.D.C. Nevada Case No. 2:19-cv-00631-GMN-NJK, a copy of which is attached hereto as Exhibit 1 (the "Subpoena").  As demonstrated below, the Court should quash entirely the Subpoena because it: (1) seeks discovery that is cumulative to and duplicative of records and deposition testimony previously provided to Switch by Flexential and its former executive, Dave Leonard; (2) improperly demands that Flexential produce to Switch, a direct competitor, information that is highly confidential, proprietary, and competitively sensitive, including detailed records concerning Flexential's customers; (3) is substantially overbroad in that, among other things, it improperly seeks discovery relating solely to an entirely different lawsuit than the one in which it was issued; (4) compliance would impose on Flexential a burden that is grossly disproportionate to

any legitimate benefit that Switch would receive from the demanded discovery; and (5) most of the discovery demanded is neither relevant to nor reasonably likely to lead to the discovery of admissible evidence in the case in which it was issued, particularly given the recent dismissal of the only claim to which most of the demanded discovery even arguably relates. Alternatively, if the Court chooses to require Flexential to produce any documents, the Court should enter a protective order restricting access to those documents to outside counsel only, and should require Switch to pay Flexential the reasonable costs of complying with and responding to the Subpoena.

## D.C.COLO.L.CivR 7.1A CERTIFICATION

Pursuant to D.C.COLO.L.CivR 7.1(A), undersigned counsel conferred with counsel for Switch regarding this Motion and attempted to resolve the dispute. On December 13, 2019 Flexential sent a letter to Switch's counsel outlining Flexential's objections to the Subpoena and requesting that Switch significantly narrow the scope of the Subpoena. Exhibit 2 (Dec. 13 Letter to Switch). Switch has not responded to that letter.[1]

## BACKGROUND

Switch Ltd. ("Switch") is a data center operator founded in 2000 and headquartered in Las Vegas, Nevada.[2] Flexential, formerly known as ViaWest, entered the Las Vegas data center market in 2008 and now has two data centers in the Las Vegas area.[3] ViaWest's North Las

---

[1] This motion is timely, even though the Subpoena initially required compliance no later than December 2, 2019. Exhibit 1 (Subpoena). As reflected in the email exchange attached as Exhibit 3, Flexential requested and received from Switch an extension of time through December 18, 2019, within which to respond to the Subpoena.

[2] Switch About Page, https://www.switch.com/about/#about (last visited Dec. 17, 2019).

[3] ViaWest merged with Peak 10 in 2017 and rebranded as Flexential in January 2018. Flexential will variably be referred to by either name, depending on the context. *See* Flexential Company Page, https://www.flexential.com/company (last visited Dec. 17, 2019).

Vegas "Lone Mountain" data center opened in 2013 and was the first serious competition Switch

faced in the upper end of the data center market in Las Vegas.  Since at least 2014, Switch and

Flexential have vigorously competed for customers in the Las Vegas data center market.  *See*

Exhibit 4 (Las Vegas Datacenter Market Report), p. 3 (identifying Switch and ViaWest as the

only operators of large-capacity, enterprise-quality data centers in the Las Vegas market).

During the same time, Switch has engaged in a persistent campaign of improper

competition with ViaWest through a variety of channels, including misusing legal process and

threats of various forms of legal redress for imagined misconduct by ViaWest, and the

anonymous publication of false and misleading claims concerning ViaWest and its personnel.

For example, in 2014 Switch's in-house counsel Samuel Castor filed a complaint with the

Nevada Attorney General's Office alleging deceptive trade practices by ViaWest.  Exhibit 5 (AG

Complaint).  The allegations concerned ViaWest's marketing of design certifications issued to

the Lone Mountain data center by the Uptime Institute ("Uptime"), a third-party organization

which certifies data center facilities.  ViaWest engaged counsel and responded to that complaint.

Exhibit 6 (AG Response).  After receiving ViaWest's response, the Attorney General took no

further action.

Switch also created a website that is dedicated to attacking the reputation of ViaWest and

its Lone Mountain data center based on half-true and untrue claims.  Exhibit 7 (Domain Registry

of datacenterrisks.com).  The contents of that website are reflected in Exhibit 8.  Notably, in

making its online accusations against ViaWest, Switch chooses not to identify itself.

Then in 2017, Switch, in relation to an action with Uptime in front of the Trademark Trial

and Appeal Board, took the deposition of ViaWest's senior executive Dave Leonard, who was

deeply involved in ViaWest's operations in Las Vegas.  Around the same time, Mr. Leonard was

also subpoenaed for a wide range of documents pertaining to the same subject matter alleged in

Mr. Castor's Attorney General Complaint.  After Mr. Leonard's deposition, Switch's counsel

sent a letter to ViaWest threatening to sue ViaWest.  Exhibit 9 (Litigation Hold Letter).  Again,

ViaWest was forced to pay counsel to respond.  Exhibit 10 (Litigation Hold Response).  Any

claims Switch may have thought it had against ViaWest were clearly time barred at the time it

threatened to sue, despite Switch's apparent attempt to revive those claims by way of Mr.

Leonard's 2017 deposition testimony.  Switch has not yet filed the threatened lawsuit, but its

persistence in pursuing the discovery sought by the Subpoena may well be a continuation of its

attempt to revive time barred claims, and a signal that the threatened (although baseless) action

may still be forthcoming.

On November 6, 2019, both Switch and a company named Cobalt extracted another

deposition from Dave Leonard, who is now retired from his position with Flexential.  This

deposition was taken in an antitrust case Cobalt has filed against Switch (the "Cobalt Action").

Exhibit 11 (Cobalt Compl.).  In that case, Cobalt claims that Switch put it out of business using

illegal business practices.  Switch's examination of Mr. Leonard explored a number of topics that

are similar to those covered by the Subpoena.[4]

---

[4] At Flexential's request and expense, Flexential's counsel represented Mr. Leonard at each
deposition referred to in this motion and is therefore familiar with the deposition transcripts.
However, the transcript of Mr. Leonard's deposition includes substantial material designated for
protection under a protective order entered in the antitrust case, which arguably limits counsel's
ability to disclose the Cobalt deposition to either Flexential or this Court, at least without the
consent of Switch and Cobalt or entry of an order modifying the protective order.  Accordingly,
counsel respectfully requests that for present purposes this Court accept counsel's statements
concerning the subjects discussed in Mr. Leonard's deposition—which Flexential believes to be

Most recently, on November 7, 2019, Switch took yet another deposition of Mr. Leonard, this time in connection with the same case in which the Subpoena was issued (the "Uptime Action"). Exhibit 12 (Switch First Am. Compl.). In the Uptime Action, Switch has alleged, among other things, that Uptime misleads data center consumers by allowing Switch's competitors (like ViaWest) to use Uptime's design certifications in a misleading manner. In this deposition—the third he has taken of Mr. Leonard—Mr. Castor retraced some of the same ground he covered in the 2017 deposition and then tried to convert Mr. Leonard into an uncompensated expert witness in connection with Switch's current dispute with Uptime, asking him hours of questions about the alleged misdeeds of other data center operators, which Mr. Castor apparently thinks have something to do with Switch's dispute with Uptime. Significantly, on December 3, 2019—since that deposition was taken, and since Switch issued the Subpoena to Flexential—the Nevada District Court has granted, in part, a motion to dismiss filed by Uptime. Exhibit 13 (Dec. 3 Order). The Order specifically dismissed Flexential's deceptive trade practices claim against Uptime insofar as it relates to misrepresentations made by Uptime's customers. *Id.* at p. 6 (holding that "[Switch] failed to state a claim against [Uptime] premised upon [Uptime's] customers' misleading statements"). Despite Flexential's letter requesting that Switch narrow the scope of its Subpoena, and the December 3 Order dismissing the only claim to which ViaWest was potentially relevant, Switch has not taken any action to withdraw the Subpoena or to narrow its scope.

---

undisputed—as the representations of a member in good standing of the bar of this Court. Should the Court wish to review Mr. Leonard's deposition transcript counsel will take the steps necessary to facilitate that review.

Moreover, both of Mr. Leonard's 2019 depositions were preceded by document productions as a result of subpoenas served on Flexential by both Cobalt and Switch.  To date, Flexential has produced 743 pages and 82 unique documents to Switch or Cobalt.  Mr. Leonard has also given three full days of detailed deposition testimony pertaining to ViaWest, the Las Vegas data center market, and related subjects.

Because the Subpoena is substantially broader than the subpoenas previously received by Mr. Leonard and Flexential, Flexential concedes that it may cover certain documents that neither it nor Mr. Leonard has produced.  However, Switch has made no effort to show, nor can it, that such additional records are not cumulative to or duplicative of the documents that Flexential and Mr. Leonard have already produced, or that any additional documents that Flexential might be able to locate add enough value to justify further imposing on Flexential and further intruding on its customer relationships and business operations.  Moreover, Switch cannot show that its need for any such additional documents justifies imposing on Flexential any additional costs of response or compliance, beyond those incurred since 2014 by Flexential on its own and Mr. Leonard's behalf.

Accordingly, Flexential asks that the Court quash the Subpoena in its entirety or, in the alternative, enter a protective order to substantially limit the scope of its document production, prevent the disclosure or misuse of its confidential commercial information, and require Switch to pay Flexential for the reasonable costs of response and compliance, including the costs associated with litigating this motion.

## ARGUMENT

### 1.  Pursuant to Federal Rules of Civil Procedure 26 and 45, the Court Should Quash the Subpoena in Its Entirety.

Fed. R. Civ. P. 45(d)(3) governs the quashing or modifying of subpoenas. The court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A).  Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the proposed discovery is outside of the scope permitted under Rule 26(b)(1).  Fed. R. Civ. P. 26(b)(1) makes clear that the scope of discovery is limited to matters that are both "relevant" and "proportional."  To determine if the discovery is proportional, the court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id*; *Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 561 (D. Colo. 2014).

Fed. R. Civ. P. 26(c)(1) provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  The rule permits the entry of a protective order forbidding inquiry into certain matters or limiting the scope of discovery or disclosure.  Fed. R. Civ. P. 26(c)(1)(D).  The court may control the scope and the manner of discovery to protect sensitive, confidential commercial

information and ensure that that information is either not revealed or only revealed in a specified way.  Fed. R. Civ. P. 26(c)(1)(G).  The court may order a protective order in its discretion. *Estate of Trentadue v. U.S.*, 397 F.3d 840, 865 (10th Cir. 2005).

Flexential is not a party to the Uptime Action.  The Federal Rules "recogniz[e] that in many in instances '[n]onparty witnesses are powerless to control the scope of litigation and discovery.'"  *W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, No. 11-CV-01611-MSK-CBS, 2014 WL 1257762, at *25 (D. Colo. Mar. 27, 2014) (citing *United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 371 (9th Cir.1982)).  Accordingly, "[n]on-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue."  *Tresona Multimedia, LLC v. Legg*, No. 15 C 4834, 2015 WL 4911093, at *2 (N.D. Ill. Aug. 17, 2015) (citations omitted); *see also Venegas v. Southwest Airlines Co.*, No. C07-1259-JPD, 2007 WL 9776384, at *1 (W.D. Wash. Sept. 18, 2007).  Further, confidential information is afforded extra protection from discovery when it may be used against a company by a direct competitor.  *Covelo Clothing, Inc. v. Atlandia Imports, Inc.*, No. 07-cv-02403-MSK-MEH, 2007 WL 4287731, at *1 (D. Colo. 2007); *Zenith Radio Corp. v. Matsushita Eletric Ind. Co.*, 529 F. Supp. 866, 890 (E.D. Pa. 1981) ("Competitive disadvantage is a type of harm cognizable under Rule 26.").  Here, Switch, a direct competitor, has subpoenaed non-party Flexential for confidential business documents and communications, all of which are irrelevant to the surviving claims in the Uptime Action and most, if not all, of which are irrelevant to the dismissed claim in the Uptime Action.  Switch cannot make a showing that its needs in the Uptime Action justify the burden imposed on Flexential in responding to the Subpoena.

**A.    The Subpoena is unreasonably cumulative and duplicative.**

This is the third subpoena to produce documents and other materials that Switch has served on Flexential or one of its senior executives since 2017.  Despite the burden associated with doing so, Flexential has cooperated with Switch's previous document requests, and expended significant time and expense to do so.  In addition, Flexential's (now retired) senior executive Dave Leonard has completed two full-day depositions in connection with the lawsuits between Switch and Uptime, and yet another deposition taken by Switch in connection with its lawsuit with Cobalt.

Flexential has also already produced a significant number of documents that are responsive to certain requests in the Subpoena.  For example, Flexential produced documents responsive to Requests number 1–3, 12, and 16 in September of this year in connection to subpoenas issued in the Cobalt litigation.  Flexential has told Switch that it is willing to re-produce those previously produced documents, despite their minimal, if any, relevance to the Uptime Action.  Exhibit 2 (Dec. 13 Letter to Switch).  But the Subpoena should not be used to re-issue prior discovery requests in a separate litigation in search of a broadened production of documents.

For the requests that are not duplicative of prior discovery, Switch has not shown good cause for why it could not have sought the information in prior document requests or in the multiple depositions it has taken of former Flexential executive Dave Leonard.  Switch had an opportunity to obtain oral testimony from Mr. Leonard in its litigation with Uptime—twice—and subpoenaed Mr. Leonard for records derived from his employment at Flexential.  Switch has not demonstrated why the information it now seeks could not have been obtained either by Mr.

9

Leonard's deposition testimony or from the prior document production, or why the information it previously obtained from Flexential and Mr. Leonard does not meet its needs in this case.

Moreover, several of Switch's Requests ask for documents and communications which are either publicly available or which can be obtained by its opposing party, Uptime.  For example, Request number 10 asks for "[a]ll marketing materials [] containing the phrase "Tier," from January 1, 2012 to December 31, 2017."  Many if not most of the materials that Flexential used to market its services are publicly available to Switch.  Indeed, several documents responsive to Request number 10 were used by Switch's counsel in its November 7, 2019 deposition of Mr. Leonard.

Requests number 14 and 15 ask for documents and communications exchanged with Uptime, and should be obtained directly from Uptime, a party to the litigation.  The Court "must limit the frequency or extent of discovery otherwise allowed" when the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." F.R.C.P. 26(b)(2)(C).  Here, Switch is able to obtain or has already obtained responsive documents from sources other than Flexential, a nonparty that has already been subject to significant burden in the Uptime Action.

      **B.**      **Quashing the Subpoena is necessary to safeguard confidential information from Flexential's direct competitor.**

Switch demands that Flexential produce numerous documents containing extremely sensitive and confidential information vital to Flexential's business and ability to compete,

including unreasonable demands for confidential customer communications and customer

contracts such as:

> "All documents and communications exchanged to/from You containing, discussing, or detailing written complaints about You and/or your services . . ."  (Exhibit 1, Request 3).

> All documents and communications exchanged to/from You containing, discussing, or detailing written requests for service credits from Your customers related to your services . . ."  (Exhibit 1, Request 5).

> "All customer contracts of entities at [Flexential's Las Vegas data center facility] . . ." (Exhibit 1, Request 7).

> "All documents and communications exchanged to/from You with any employee, officer, or representative of [Flexential customer] Nintendo . . . regarding Your marketing, sales, services, construction, design, facility functionality, sustainability, security, quality, connectivity, interconnection, patents, intellectual property, and certifications."  (Exhibit 1, Request 12).

Subpoena Requests number 4, 6, 11, and 17 contain equally sweeping demands for confidential

customer communications and competitively sensitive information.

Customer-related information such as its confidential customer contracts are especially

deserving of protection here because Switch and Flexential are direct competitors in the data

center services industry.  *See Covelo Clothing, Inc.*, 2007 WL 4287731, at *1 ("[c]onfidential

information that may be used against the company by a direct competitor is generally afforded

more protection").  When a party is asked to produce sensitive and confidential commercial

information to a direct competitor, courts presume that such production would be harmful.  *Int'l*

*Coal Group, Inc. v. Tetra Fin. Group, LLC*, No. 2:09-cv-115-CW-PMW, 2010 WL 2079675, at

*2 (D. Utah May 24, 2010).  But, as detailed above, not only are Switch and Flexential direct

competitors, they also have been engaged in a long and contentious struggle that remains

unresolved.  Their history includes aggressive attacks by Switch against Flexential's Las Vegas data center business including at least one complaint by Switch to the Nevada Attorney General about Flexential's advertising (which resulted in no action), Switch's direct threat to sue Flexential, and the creation of a website for the sole purpose of harming Flexential's business reputation.  Given Switch's history, Flexential is justifiably concerned about surrendering non-public, confidential materials to Switch, especially where, as here, there is no demonstratable justification for being forced to do so.

### C.    The Subpoena is overbroad and unduly burdensome.

 "[T]o the extent a subpoena sweepingly pursues material with little apparent or likely relevance to the subject it runs the greater risk of being found overbroad and unreasonable." *Premier Election Solutions, Inc. v. Systest Labs Inc.*, No. 09-cv-01822-WDM-KMT, 2009 WL 3075597, at *5 (D. Colo. Sep. 22, 2009) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 50 (S.D.N.Y. 1996).  In determining the scope of permissible discovery, "discovery from third-parties in particular must, under most circumstances, be closely regulated." *Id.* at *3.

Here, the Subpoena's Requests are consistently overbroad such that, even if some responsive records might be relevant to the Uptime Action, those records would be predominately if not entirely irrelevant.  For example, Requests number 14 and 15 demand "[a]ll documents and communications exchanged to/from You with any employee, officer, or representative of [Uptime] . . . from January 1, 2013 to December 31, 2017."  As Switch is well aware from the three depositions that it has taken of Mr. Leonard, ViaWest has sought and obtained several Uptime certifications of its own facilities, including facilities in markets other than Las Vegas, the records of which cannot possibly be relevant to the remaining issues in the

pending lawsuit between Switch and Uptime.  Similarly, Switch's Requests for customer communications, pricing information, and related documents—while improper due to their lack of relevance and competitively sensitive nature—also lack any particularity that might limit production to documents Switch believes are necessary to litigate its case against Uptime.  *See* Exhibit 1, Requests 3–7, 11–12 and 17.  Courts assessing similarly overbroad requests for confidential commercial information have noted their "healthy suspicion that [the party issuing the Subpoena] is seeking discovery from the subpoenaed nonpart[y] for purposes which are unrelated to the present litigation."  *Premier Election Solutions*, 2009 WL 3075597, at *5 (quoting *Echostar Comm'ns Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 396 (D.Colo.1998)).

The Subpoena also requests documents and communications that are not relevant to Switch's dispute with Uptime but instead relate to Switch's entirely separate litigation with Cobalt, an antitrust case in which, again, Flexential has no involvement other than previously producing documents pursuant to subpoenas from both Cobalt and Switch and providing counsel to Mr. Leonard in connection with his depositions.  *See* Exhibit 11 (Cobalt Compl.).  Indeed Subpoena Request number 16 almost completely duplicates Switch's subpoena requests to Flexential in the Cobalt Action, in which, upon information and belief, discovery is now closed. Exhibit 14 (Sept. 2019 Switch Subp.).  Flexential has cooperated with that Subpoena request and has offered to reproduce in this case the documents it provided to Switch in that litigation. Exhibit 2 (Dec. 13 Letter to Switch).  Switch cannot justify trying to use the Uptime litigation as a means of reopening and expanding discovery in the Cobalt case.  *See Premier Election Solutions*, 2009 WL 3075597, at *5 ("It is 'axiomatic that a party cannot take discovery for purposes unrelated to the lawsuit at hand.") (quoting *Echostar*, 180 F.R.D. at 396).  By issuing

13

such overbroad requests which are not tailored to elicit documents relevant to its dispute with

Uptime, Switch has failed to "take reasonable steps to avoid imposing undue burden or expense"

on Flexential.  *See* F.R.C.P. 45(d)(1).

> **D.** **The Subpoena seeks records that are neither relevant nor reasonably likely to lead to the discovery of admissible evidence.**

To be enforceable, a subpoena served on a non-party "must seek information that is

relevant to a party's claims or defenses and proportional to the needs of the case." *Frappied v.*

*Affinity Gaming Black Hawk, LLC*, No. 17-cv-01294-RM-NYW, 2018 WL 1899369, at *3 (D.

Colo. April 20, 2018).  "When the relevance of a particular topic is not apparent from its face,

the party seeking the information bears the burden of first establishing the relevance of the

information." *Id.* at *4.

Here, there is no apparent connection between the Subpoena's requests and the material

facts of Switch's dispute with Uptime.  Indeed, a recent order by the Nevada District Court

dismissed the only claim in which responsive documents could arguably have related.  Switch's

complaint against Uptime alleges breach of contract, deceptive trade practices, and various

claims related to the parties' registrations with the United States Patent and Trademark Office

(USPTO).  Exhibit 12 (Switch First Am. Compl).  As part of its deceptive trade practice claim

against Uptime, Switch alleged that its competitors, including ViaWest, used Uptime's design

certifications in a misleading way.  *See* Exhibit 12, p. 10.  However, in a recent order ruling on

Uptime's motion to dismiss, the Nevada District Court addressed this very argument and

concluded that "[Switch] fails to state a deceptive trade practices claim against [Uptime]

premised on [Uptime's] customers' misleading statements."  Exhibit 13 (Dec. 3. Order), p. 6.

Given this ruling, evidence pertaining to Flexential or ViaWest's conduct or customer relationships have no remaining relevance in the Uptime Action. Even so, Switch has not withdrawn or limited its demand that Flexential produce numerous documents and communications concerning Flexential's business operations and customer relationships. *See e.g.* Subpoena, Request No. 11 (Requesting "[a]ll potential, current, or former requests from customers for potential services responded to by You from January 1, 2013 to December 31, 2017 where you used the word "Tier" or "Uptime.").

    **2.**    **If Flexential is Required to Comply with the Subpoena, It is Entitled to a Protective Order Limiting the Scope of the Subpoena, Preventing the Disclosure of Confidential Business Information, and Requiring Switch to Pay Flexential's Reasonable Costs Associated with this Motion and Compliance with the Subpoena.**

If the Court finds that Flexential must produce any records in response to the Subpoena, Flexential requests that the Court significantly narrow the Subpoena so that the document demand complies with Rule 26(b), so that any confidential or competitively sensitive information be subject to a designation for "Outside Counsel Eyes Only," specifically excluding Mr. Castor and his in-house colleagues, and so that Switch is required to pay Flexential's reasonable costs associated with this motion and compliance with the Subpoena.

    **A.**    **The Court should limit the Subpoena to records Switch can demonstrate are necessary to the Uptime Action and will not cause competitive harm to Flexential.**

Rule 26 allows a court to limit discovery if the discovery sought is, among other things, not "relevant to the party's claim or defense and proportional to the needs of the case" and when "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1) and (b)(2)(C). As discussed above, the Subpoena contains requests that are cumulative,

contain improper demands for highly confidential and competitively sensitive materials, are

overbroad, not proportionate to the needs of the case, and largely, if not completely, irrelevant to

the parties' claims and defenses. Switch has not demonstrated why its expansive Subpoena

Requests are necessary to its claims against Uptime, and why they justify significant time,

expense, and the disclosure of sensitive commercial information from nonparty Flexential.

Given Switch's competitive history with Flexential, its significant prior demands on Flexential,

its threats of litigation against Flexential which are clearly barred by the applicable statutes of

limitation, and the recent dismissal of the only potentially relevant claim in the Uptime Action,

Switch should be required to demonstrate its legitimate need for any production by Flexential,

and the Court should limit the Subpoena to just those records.

> **B.**     **Any production of confidential or competitively sensitive information
> should be accompanying by a designation of "Outside Counsel's Eyes
> Only."**

A designation limiting any confidential or competitively sensitive business records to

*outside counsel* only is particularly important here, where Switch's in-house counsel, Mr. Castor,

serves a significant non-legal, operational role at Switch as Executive Vice President of Policy.

Exhibit 15 (Castor Company Profile). According to Mr. Castor's profile on the Switch website,

he has transitioned from his role as Vice President and Associate General Counsel to a position

as Executive Vice President of Policy, in addition to retaining a role as Deputy General Counsel.

When courts determine whether to limit discovery to outside counsel, they generally look to

whether in-house counsel is involved in "competitive decisionmaking" such that the risk of

disclosure may outweigh the need for confidential information. *Sanofi-Aventis U.S. LLC v.

Breckenridge Pharm., Inc.*, Nos. 15-289 (MAS) (LHG), 15-1836 (MAS)(LHG), 2016 WL

308795, at *2 (D. N.J. Jan. 25, 2016).  Courts have found that competitive harm is likely if

confidential information is disclosed to in-house counsel that holds a position that is not purely

legal, even if in-house counsel is not involved in day-to-day decisionmaking.  *Suture Exp., Inc. v.*

*Cardinal Health*, *200, LLC*, No. 12-2760-RDR, 2013 WL 6909158, at *7 (D. Kan. Dec. 31,

2013) (prohibiting disclosure of confidential documents where in-house counsel also served a

limited role on the Board of Directors).

Here, not only does Mr. Castor hold a significant non-legal role at Switch, he has also

been directly involved in the competitive attacks against Flexential/ViaWest for many years, as

evidenced by his submission of the complaint to the Nevada Attorney General.  *See* Exhibit 5

(AG Compl.).  While Mr. Castor may serve a role in the Uptime Action, his significant

operational position at Switch "creates a major risk and unacceptable opportunity for the

inadvertent disclosure of information."  *Suture Exp., Inc.*, 2013 WL 6909158, at *7.  An outside

counsel only designation is necessary to protect Flexential from the unacceptable risk of

disclosing highly confidential materials to its direct competitor.

### C.    Switch should pay the reasonable costs associated with this motion and compliance with the Subpoena.

Pursuant to Rule 45(d)(2)(B)(ii), the Court "must protect a person who is neither a party

nor a party's officer from significant expense resulting from compliance."  Rule 45 recognizes

that because "[n]onparty witnesses are powerless to control the scope of litigation and discovery"

they "should not be forced to subsidize an unreasonable share of the costs of a litigation to which

they are not a party.'"  *W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, No. 11-CV-

01611-MSK-CBS, 2014 WL 1257762, at *25 (D. Colo. Mar. 27, 2014) (citing *United States v.*

*Columbia Broadcasting System, Inc.*, 666 F.2d 364, 371 (9th Cir.1982)).  Rule 45's cost-shifting

provision is not discretionary.  *Phillip M. Adams & Assocs., L.L.C. v. Fujitsu Ltd.*, No. 1:05-CV-

64 TS, 2010 WL 1064429, at *3 (D. Utah Mar. 18, 2010).  If the Court finds that Flexential must

produce certain documents in response to the Subpoena, Switch should be ordered to cover the

reasonable costs of such production.

When considering whether a Subpoena imposes an undue burden on a nonparty such that

the nonparty should be reimbursed for its compliance, factors courts may consider include the

relevance of the documents sought, the parties' need for the documents, the particularity with

which the documents are described, the extent of privilege review required, the burden imposed,

and the nonparty's interest, if any, in the final outcome of the litigation.  *Phillip M. Adams &

Assocs.,* 2010 WL 1064429, at *3.  Here, Switch has issued a wide range of overbroad requests

with minimal, if any, apparent relevance to the Uptime Action.  Switch has not demonstrated a

legitimate need for the documents requested and has not described those documents with

particularity.  On the contrary, despite the Nevada District Court's recent dismissal of Switch's

deceptive trade practice claim that involved allegations against ViaWest and other competitors,

Switch has not narrowed the Subpoena to the Requests it might still believe to be relevant, if any.

Flexential has instead been forced to hire counsel to respond to the Subpoena and to file this

motion.  Flexential has no stake in the outcome of the Uptime Action or in Switch's dispute with

Cobalt.  Considering the burden Flexential has already incurred to comply with the multiple

depositions and documents productions that Switch has imposed on Flexential in the last two

years, Flexential should not be required to incur any further costs associated with this action.

Flexential is entitled to its reasonable costs associated with responding to and complying with the

Subpoena and is prepared to provide a good faith estimate of such reasonable costs, commensurate with the scope of any production required.

## CONCLUSION

For the foregoing reasons, Flexential respectfully requests that the Court quash the Subpoena in its entirety or, in the alternative, enter a protective order in accordance with the arguments set forth above.

DATED:  December 18, 2019.

Respectfully submitted,

_/s/ Edwin P. Aro_
Edwin P. Aro (Bar No. 18698)
Rachel L. Ryan (Bar No. 52814)
ARNOLD & PORTER KAYE SCHOLER LLP
370 Seventeenth Street, Suite 4400
Denver, CO 80202-1370
Phone: (303) 863-1000
Ed.Aro@arnoldporter.com
Rachel.Ryan@arnoldporter.com

*Attorneys for Movant Flexential Colorado Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2019, a true and correct copy of the foregoing document was served on counsel via e-mail and U.S. First Class mail, addressed as follows:

Jessica M. Lujan
Joanna M. Myers
James D. Boyle
HOLLEY DRIGGS WALCH FINE PUZEY STEIN & THOMPSON
400 South Fourth Street, 3rd Floor
Las Vegas, NV 89101
Phone (702)-791-0308
jlujan@nevadafirm.com
jmyers@nevadafirm.com
jboyle@nevadafirm.com

Samuel D. Castor
Switch, Ltd.
7135 S. Decatur Blvd.
Las Vegas, NV 89118
Phone (702) 444-4102
sam@switch.com

*Attorneys for Respondent*

Chad R. Fears
Joshua Cools
EVANS FEARS & SCHUTTERT LLP
2300 W. Sahara Avenue, Suite 950
Las Vegas, NV 89102
Phone (702)-805-0290
cfears@efstriallaw.com
jcools@efstriallaw.com

Diane Siegel Danoff
Luke Michael Reilly
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2802

Phone (215) 994-4000
diane.sanoff@dechert.com
luke.reilly@dechert.com

Jennifer Insley-Pruitt
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Phone (212) 698-3822
jennifer.insley-pruitt@dechert.com

*Attorneys for Uptime Institute, LLC*

/s/ Edwin P. Aro
*Attorney for Movant*

21

US 167215646